# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**ANGELA F. TUCKER**                                                          **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 3:21-cv-00137-JMV**

**KILOLO KIJAKAZI**
*Acting Commissioner of Social Security*                                      **DEFENDANT**

### FINAL JUDGMENT

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of a March 3, 2021, final decision of the Commissioner of the Social Security Administration (the "Commissioner") finding that the Plaintiff was not disabled. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[1] For the following reasons, the Commissioner's case is remanded for reconsideration.

On this appeal the Plaintiff makes the following arguments: (1) the ALJ erred with respect to his analysis of the studies of the Plaintiff's lumbar spine; (2) the ALJ erred with respect to his analysis of the Plaintiff's mental health limitations; and (3) the ALJ erred with respect to his analysis of the Plaintiff's shoulder impairments.

---

[1] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389(1971)). "It is more than a mere scintilla, and less than a preponderance." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

With regard to the first alleged error, Plaintiff asserts that the ALJ improperly discounted Plaintiff's spinal impairment in as much as "[i]t appears from the ALJ's assessment that he only considered the [August 2020] MRI of the Plaintiff spine (TR 441) not the [August 2020] CT scan of plaintiff's spine." Pl. Br. at 5. According to Plaintiff's counsel, the CT had more "pronounced findings" than the MRI. *Id.* In support of the argument, Plaintiff cites only to the following language in the CT report: "Chronic L5-S1 degenerative disc disease, including thinning, vacuum phenomenon and mild bulge. (TR 521)." *Id.* (emphasis omitted).

In response, the Commissioner notes that Plaintiff offers no specific comparative arguments regarding the contents of the respective reports, which comparison, the Commissioner argues, would, in fact, show that Plaintiff's August 2020 lumbar spine MRI showed a "right paracentral disc extrusion" at L5, desiccation and a mild bulge at L4, and no abnormalities at L3, while the August 2020 lumbar spine CT, not dissimilarly, showed chronic L5-S1 degenerative disc disease, "minimal to mild" spondylosis elsewhere, "slight scoliosis," and no significant acute trauma. *Id.* at 406-08.

On review, the court finds that Plaintiff's claim of greater findings in the CT examination report versus the MRI examination report is not supported by the language in the reports, and in this regard, the court notes the Fifth Circuit has specifically rejected a "rigid approach" requiring "formalistic rules" of articulation by the finder of fact. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). In this case, the record reflects that the ALJ affirmatively stated that he considered "the entire record" in making the decision, and the ALJ specifically referenced Plaintiff's August 2020 hospital treatment by exhibit numbers (Exhibits B9F - B11F), showing that the exhibits were considered by the ALJ. *See* Tr. at 16, 20. The Fifth Circuit has held that such statements are presumptively valid in the absence of a showing to the contrary. *See Scharlow v. Schweiker*, 655

F.2d 645, 648 (5th Cir. 1981); *Gaultney v. Weinberger*, 505 F.2d 943, 945-46 (5th Cir. 1974) ("we see no reason to question the Judge's statement" that he considered all of the evidence). In short, Plaintiff's claim that the absence of a specific reference to the August 2020 lumbar CT examination is conclusive proof that the report was not considered lacks a legal or factual foundation.

Concerning her second assignment of error, Plaintiff asserts Dr. Buck opined in her "conclusion" paragraph that the Plaintiff seems unable to respond appropriately to coworkers and supervisors in a work environment, and that when the ALJ posed a hypothetical question to the VE that incorporated this limitation, the VE responded that no jobs would be available. Tr. at 49, 390. The Plaintiff argues that the ALJ improperly discounted Dr. Buck's finding in this regard. However, the Commissioner notes the ALJ expressly found that the statement about inability to respond to coworkers was refuted by Dr. Buck's personal examination of the claimant, which does not indicate that the claimant is so limited, making, according to the ALJ, Dr. Buck's medical opinion unpersuasive. *See id.* at 17. Plaintiff disagrees with the ALJ's assessment of Dr. Buck's personal exam record because she notes the record reflects that Dr. Buck observed that Plaintiff

> had pressured and excessive speech. . . circumstantial thought at times and required redirection repeatedly. She required interruption. She has sleep disturbance, fatigue, bouts of increased energy, history of severe depressive episodes, history of likely manic episodes, reported chronic pain with physical limitations, and she is easily annoyed by others and has been rude at work, at home and in public.

*See id.* at 389.

The Commissioner, on the other hand, points out that on examination, Dr. Buck observed no abnormalities of speech, language, thought activity, behavior, psychomotor activity, attentiveness, or responsiveness, with the exception of noting that Plaintiff "talked excessively." Tr. at 393. Dr. Buck observed that Plaintiff "displayed a full affect and euthymic mood," but was tearful on one occasion. *Id.* Dr. Buck reported that, on testing, Plaintiff was able to spell WORLD

forward and backward, and performed serial 3's with minor difficulty. *Id.* Plaintiff's judgment was reported to be good and insight as fair. *Id.*

The court finds the ALJ considered the absence of supporting findings for Dr. Buck's opinion regarding Plaintiff's ability to interact, and properly found that the opinion was unpersuasive. Tr. at 21. This finding was consistent with 20 C.F.R. § 404.1520c, which directs adjudicators to consider the supportability of medical opinion evidence. See 20 C.F.R. § 404.1520c(c)(1) (consideration of supportability is based on the "objective medical evidence and supporting explanations presented by a medical source" for the medical opinion). Plaintiff contends that the ALJ erred by finding Dr. Buck's opinion unpersuasive, suggesting that Dr. Buck's observations of excessive speech and "circumstantial thought at times" constitute objective medical evidence supporting an extremely limited ability to interact with others. *See* Pl.'s Br. at 7. However, the court agrees with the Commissioner that there is no apparent nexus between Dr. Buck's clinical observations and the ability to interact with others. And Plaintiff's further references to Plaintiff's self-reported history and characteristics as evidence supporting such an opinion, are not medical evidence, let alone objective medical evidence. *See id.*; 20 C.F.R. § 404.1513(a)(4) (defining "evidence from nonmedical sources," including the claimant). The ALJ did not err by finding that Dr. Buck's opinion regarding Plaintiff's purported inability to deal with co-workers and supervisors lacked supportability because it lacked support with objective medical evidence, which is an essential element of supportability as it is defined in the revised regulatory framework. 20 C.F.R. § 404.1520c(c)(1). Further, although the ALJ found Dr. Buck's opinion to be unpersuasive, he nevertheless found that Plaintiff was moderately limited in interacting with others and restricted Plaintiff to no more than occasional interaction with co-workers and supervisors, and no contact with the general public. *See* Tr. at 19, 21. Thus, while the ALJ did not

find Dr. Buck's opinion to be persuasive, he also included appropriate social interaction limitations in Plaintiff's residual functional capacity assessment. *Id.*

In support of her third assignment of error, Plaintiff argues that the ALJ failed to properly consider the Plaintiff's impairment(s) related to her shoulders. In asserting such an impairment, plaintiff cites to the January 23, 2020, consultative examination report by Jim Adams, M.D. wherein it is stated, with respect to the shoulders, that

> [s]he complained of pain checking motion in both shoulders. The right shoulder showed 85° flexion forward, 50° extension backward, 75° abduction at which point she said this caused tingling in her fingers, 30° external rotation and 55° internal rotation. The left shoulder showed 95° flexion forward, 50° extension backward, 90° abduction, 55° external rotation and 65° internal rotation."

Tr. at 381.

The summary paragraph also stated, "[s]houlder motion was limited bilaterally." *Id.*

The Commissioner on the other hand alleges "Plaintiff did not allege shoulder issues as a basis for her alleged disability, either in her initial reports or before the ALJ. In her application materials, shoulder use problems were not among the 10 medical conditions Plaintiff reported as contributing to her alleged disability Tr. at 216. Similarly, Dr. Adams' examination report contains no reference to shoulder use problems or limitations in Plaintiff's list of alleged medical issues. Tr. at 383-84." In short, the Commissioner asserts "there is no basis for Plaintiff's claim of error in the omission of shoulder-specific findings from the hearing decision where Plaintiff did not allege to the agency, her consultative examiner, or the ALJ that shoulder limitations contributed to her alleged disability." Def.'s Br. at 19.

The undersigned finds error here. Although it is accurate that the ALJ made no mention whatsoever of shoulder issues in his decision, the reason offered by the Commissioner for that omission is simply not accurate. The very record to which the Commissioner cites to support the

contention that the Plaintiff did not allege shoulder issues reveals that it was indeed alleged as an impairment by Plaintiff. See, for example (in no particular order): Disability report not only listing left shoulder osteoarthritis as one the ten impairments but including it among those appearing at no. 3 on the list (cited by the Commissioner, Tr. at 212); Adult function report dated February 3, 2020, "I toss and turn all night. . . left shoulder and back hurts" *id.* at 225; Since last update, reports being treated or evaluated for, among others, "rt shoulder OA" at Mettetal Clinic, *id.* at 248; March 2020 initial disability determination listing left shoulder osteoarthritis, *id.* at 78, 81; shoulder osteoarthritis on reconsideration, *id.* at 92, 95; on request for further information from DDS, dated October 31, 2019, Plaintiff alleges can only carry 5 lbs due to, among others, shoulder issues, *id.* at 219-30; Plaintiff describes pain in shoulder, *id.* at 263; in a consultative exam dated January 23, 2020, under the heading "problem number one," Dr. Adams lists pain in, among other joints, shoulders and describes pain shot in shoulder, *id.* at 379; in a consultative exam dated February 24, 2020, Dr. Buck describes Plaintiff's complaints of pain in shoulders, *id.* at 387; and in the medical consultant review, dated March 4, 2020, Dr. Brent notes impairment allegations of left shoulder pain, *id.* at 392.

In short, the reasons offered for the ALJ's wholesale disregard of Plaintiff's allegation of a shoulder impairment and the CE findings of limitations related to the same are simply wholly inaccurate and not supported by substantial evidence.

## Conclusion

On remand, the ALJ must reconsider the claimant's physical RFC and issue a new decision. If necessary, the ALJ must also obtain supplemental vocational expert testimony on the issue of whether there is any work the claimant can perform in view of all her limitations and the relevant vocational factors. The ALJ may conduct any additional proceedings that are not inconsistent with this ruling.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that this case is **REVERSED** and

**REMANDED** for further proceedings.

**SO ORDERED**, this the 26th day of May, 2022.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**